UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 0 9 2016 ★

BROOKLYN OFFICE

TRUSTEES OF THE UNITED PLANT AND
PRODUCTION WORKERS LOCAL 175
BENEFITS FUND,

                                    Plaintiffs,

                - versus -

C.P. PERMA PAVING CONSTRUCTION,
INC. a/k/a PERMA PAVE CONTRACTING
CORP. and CHARLES PASCIUTIA,

                                    Defendants.

MEMORANDUM DECISION
AND ORDER

15 Civ. 1171 (AMD) (SMG)

**ANN DONNELLY**, District Judge:

The plaintiffs, the Trustees of the United Plant and Production Workers Local 175

Benefits Fund ("plaintiffs" or "Trustees"), bring this action seeking recovery under the Labor

Management Relations Act of 1947, 29 U.S.C. § 185, and the Employee Retirement Income

Security Act, 29 U.S.C. §§ 1132(a)(3) and 1145, for the alleged failure of defendants C.P. Perma

Paving Construction and Charles Pasciutia to pay fringe benefit contributions and to comply with

other obligations under a collective bargaining agreement.  Before this court is the defendants'

motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)).  For

the reasons described below, the defendants' motion is **GRANTED** in part and **DENIED** in part.

### FACTUAL BACKGROUND

The following facts are drawn from the plaintiffs' complaint and are assumed to be true

for the purposes of this motion.  (ECF 1, Complaint, ¶ 5.)  The Funds, which are jointly

administered employee benefit and multi-employer plans within the meaning of ERISA, are

1

established and maintained by the United Plant and Production Worker Local 175 Paving

Division Union (the "Union") and various employers pursuant to the terms of a Collective

Bargaining Agreement (CBA) and Trust Indentures. (*Id.* ¶ 5.) The Funds are authorized to

collect contributions from participating employers, including payments for life insurance,

hospitalization, medical care, vacation, annuity and pension benefits; in turn, the Funds provide

fringe benefits to eligible employees and retirees. (*Id.* ¶¶ 6-7.) The Trustees are fiduciaries of

the Funds, and have brought suit on their behalf. (*Id.* ¶¶ 4-5.)

On September 24, 2008, defendant C.P. Perma Paving Construction, Inc. ("C.P. Perma")

entered an Assumption Agreement agreeing to be bound by the terms and conditions of the CBA

and the Trust Indentures with the Union. (*Id.* ¶ 15.) Individual defendant Charles Pascuitia, the

President of C.P. Perma, signed the Assumption Agreement on behalf of the company. (*Id.* ¶

13.) The plaintiffs allege that the defendants violated the terms of the CBA when they failed to

submit contribution reports specifying the hours that each of their employees worked, failed to

make any of the required fringe benefit contributions to the Funds, and failed to allow the Funds

to audit their books and records for the purpose of verifying the accuracy of its contribution

reports and fringe benefit contributions. (*Id.* ¶¶ 16-21.) The plaintiffs seek actual and liquidated

damages, interest, costs, attorney's fees, accountant fees, and audit fees, declaratory relief

directing the defendants to participate in an audit and produce contribution reports, and a

permanent injunction enjoining the defendants from "any further or future violations of this or

subsequent collective bargaining agreements."

## DISCUSSION

The defendants move for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c) on two grounds: (1) that the complaint failed to plead fraud against defendant

Pascuitia, as would be required to impose liability on an individual defendant under ERISA; and (2) that any of the plaintiffs' claims for damages from before March 6, 2009 are barred by the statute of limitations. (ECF 16, Def's Mem. of Law in Support of Def's Mot. for J. on the Pleadings ("Def's Mem. of Law"), at 2-5.)

## I. Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed . . . but early enough not to delay trial." F.R.Civ.P. 12(c). On a motion for judgment on the pleadings, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir. 2009)).

In considering a motion for judgment on the pleadings, a court applies "the same standard applicable to dismissals pursuant to Fed.R.Civ.P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Thus, the court must accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiffs. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). To survive a Rule 12(c) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard, a cause of action is subject to dismissal if the complaint shows on its face that relief is barred by the applicable statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## II. Analysis

### a. Individual Liability of Defendant Pascuitia

Absent "special circumstances," individual officers are not personally liable for unpaid benefit contributions that should have been made by corporations under ERISA. *Solomon v. R. Mignon & Sons, Inc.*, No. 94 Civ. 1344, 1994 WL 538617, at *2 (S.D.N.Y. Oct. 3, 1994) (citing *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993), *cert. denied*, 508 U.S. 973 (1993)); *see also Finkel v. The Triple A Group, Inc.*, 708 F.Supp.2d 277, 283 (E.D.N.Y. 2010) (adopting report and recommendation) (explaining that while ERISA provides for liability against an "employer," a "corporate officer is ordinarily not personally liable for the ERISA obligations of the corporation."). Indeed, it is well-settled in the Second Circuit that an individual cannot be held personally liable for a failure to make ERISA contributions "solely by virtue of his role as officer, shareholder, or manager." *Sasso,* 985 F.2d at 50.

Courts have found "special circumstances" justifying individual liability, however, when the defendant engaged in fraud related to the non-payment of benefit funds under ERISA, *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994), the corporation is the defendant's "alter ego," *Sasso*, 985 F.2d at 51, or when "there [was] clear and explicit evidence" of the parties' intent that the individual defendant be personally bound. *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 53 (2d Cir. 2002). In analyzing whether an individual should be held liable for ERISA payments due to fraudulent conduct, courts engage in a two-step inquiry. *Bourgal v. Robco Contracting Enterprises, Ltd.*, 969 F. Supp. 854, 864 (E.D.N.Y. 1997). First, a court must consider whether the individual is a "controlling corporate official." *Lollo*, 35 F.3d at 33. This requires an examination of "the officer's actual role in the company's affairs and relationship to the

4

company's wrongdoing." *Id.* Second, the court must consider whether the plaintiffs have established the elements of common law fraud, which include (1) a material false representation or omission of existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages. *Id.*

The instant complaint makes only one allegation against defendant Pasciuitia: that he signed the Assumption Agreement on "behalf of" C.P. Perma Paving Construction, Inc. (Complaint ¶ 13.) It does not allege that he signed the Agreement in his individual capacity, or that the parties intended that Pascuitia would be "personally bound" by the terms of the Assumption Agreement. Nor does it allege that the corporation was Pascuitia's alter ego, such that the corporate veil should be pierced. The only other reason, then, that a claim for individual liability against Pasciutia can be sustained is if the plaintiffs adequately alleged that he was involved in fraudulent conduct with respect to the non-payment of benefits to the Funds.

While federal Rule of Civil Procedure 9(b) requires that allegations of fraud be plead with "particularity," the Court need not reach the issue of whether the complaint satisfies this heightened pleading standard. This is because the complaint does not make any allegation that Pascuitia engaged in any fraudulent conduct at all; rather, the only allegation against him is that he signed the CBA "on behalf of" C.P. Perma Paving.[1] I therefore find that the complaint does not adequately plead any of the "special circumstances" that would be required to sustain a claim of liability against individual defendant Pascuitia. *See Rumelt v. Bromley Coats, Inc.*, No. 98 Civ. 5547, 1998 WL 851512, at * 3 (S.D.N.Y. Dec. 3, 1998) (dismissing claims against the principal officer and controlling shareholder of the corporate defendant for unpaid ERISA

---

[1] Notably, the plaintiffs were provided an opportunity to amend their complaint, if they deemed it necessary, in order to sufficiently plead liability against defendant Pascuitia. *See* ECF 19 at 6:3-7:6. They chose not to amend.

contributions as the complaint was "devoid of allegations as to [the individual defendant's] role in the alleged fraud and ERISA violations").[2] The plaintiffs' claims with respect to individual defendant Pasciutia are therefore dismissed.

### b. Statute of Limitations

As the ERISA statute does not prescribe a limitations period, Second Circuit law provides that the statute of limitations for ERISA claims is to be borrowed from the most analogous state-law statute. *Miles v. New York Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan,* 698 F.2d 593, 598 (2d Cir. 1983). Here, the parties agree that the six-year statute of limitations period applicable to breach of contract actions under New York law governs the plaintiffs' claims. *See* ECF 16, Def's Mem. of Law, at 5; ECF 21-1, Plaintiff's Mem. of Law in Opp. to Def's Mot. for J. ("Pl. Opp. Mem.") at 6-7; *see also Hanley v. Aperitivo Restaurant Corp.,* No. 97-Civ.-5768, 1998 WL 307376, at *7 (S.D.N.Y. June 11, 1998) (finding that New York's six year statute of limitations for breach of contract claims is applicable to a claim for unpaid benefit contributions under ERISA). Thus, the defendants argue, the plaintiffs are barred from seeking benefit contributions from six years prior to the filing of the complaint,

---

[2] The cases upon which the plaintiffs rely are distinguishable, as they each involve circumstances that are not alleged in the present case. Unlike this case, those cases involved underlying agreements that specifically designated money owed to a Fund as "assets" of the Fund. *See NYSA-ILA Medical & Clinical Services Fund v. Catucci,* 60 F.Supp.2d 194, 201 (S.D.N.Y. 1999) ("Courts consistently hold that a company's unpaid debt to an ERISA fund is an 'asset' of that fund when the applicable agreement declares such debts to be fund assets."); *LoPresti v. Terwilliger,* 126 F.3d 34, 39 (2d Cir. 1997) ("It is undisputed that the employees' contributions to the Funds . . . were plan assets governed by ERISA.") As a result, the courts in both cases found that an individual defendant who was a controlling officer of the company was a fiduciary who could be found individually liable for non-payment of contributions to a Fund. *See NYSA-ILA,* 60 F.Supp.2d at 202-203; *LoPresti,* 126 F.3d at 40. Here, there is no allegation that the CBA or Trust Indenture included language providing that contributions owed to the Fund by a company were Fund assets.

or the period between the signing of the CBA on September 24, 2008 and March 6, 2009. (ECF 27, Defendant's Reply Mem. of Law ("Reply Mem. of Law"), at 3.) The resolution of this issue turns on when the statute of limitations on the plaintiffs' claim for benefit contributions began to run—in other words, when the plaintiffs' claim accrued.

While state law provides the statute of limitations for ERISA claims, courts generally look to federal law to determine when a claim begins to accrue for purposes of the limitations period. *Durso v. 130-10 Food Corp.*, No. 05 CV 6065, 2009 WL 3084268, at *4 (E.D.N.Y. Sept. 23, 2009) (adopting report and recommendation). Under federal law, a plaintiff's claim accrues when he "discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."[3] *La Barbera v. R. Rio Trucking*, No. 03-CV-1508, 2007 WL 2177063, at *3 (E.D.N.Y. July 27, 2007) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007)). The defendants argue that because the plaintiffs "knew or reasonably should have known of a delinquency claim the month after the Fund contribution is not paid," the plaintiff's claim began to accrue the month after C.P. Perma entered into the CBA. (ECF 27, Def. Reply Mem. at 3.)

The earliest point at which the plaintiffs' claim for nonpayment of fund contributions could have accrued was when the first monthly contribution date passed without payment. *See Durso*, 2009 WL 3084268, at *5; *Hanley*, 1998 WL 307376, at *8 (finding that "the first time the

_____

[3] The plaintiffs cite to *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983), for the proposition that the limitations period did not begin to run until "there has been repudiation by the fiduciary which is clear and made known to the beneficiaries." (ECF 21-1, Pl. Opp. Mem. at 7.). But that standard is not applicable here. In *Miles*, the plaintiff was an individual claimant seeking a pension payment from a benefit fund subject to ERISA. The Second Circuit held that the statute of limitations on the plaintiff's claims did not begin to run until the benefit fund had made a clear repudiation of the plaintiff's claims. *Miles*, 698 F.2d at 598. As this case involves the alleged non-payment of contributions by an employer, rather than a claim by a fund beneficiary, the "clear repudiation" standard set forth in *Miles* is not clearly applicable.

funds had 'reason to awaken inquiry' sufficient to prompt an audit was in late 1994, when

Aperitivo first failed to submit its records and contributions."). Here, as the plaintiffs' claim is

that the defendants made no benefit contributions at all, the first incident of non-payment to the

Funds may have been sufficient to place the plaintiff Trustees on notice of the defendants'

alleged breach. At this early stage of the proceedings, however, I find that there is a factual issue

as to when the Trustees knew or should have known that defendant C.P. Perma was not making

contributions to the underlying Funds. *See, e.g., NYSA-ILA Medical and Clinical Services Fund

v. Salco Trucking Corp.*, No. 90 Civ. 5949, 1992 WL 73369, at *2 (S.D.N.Y. Mar. 31, 1992),

*reconsidered and partially withdrawn on other grounds,* 1993 WL 119702 (S.D.N.Y. April 15,

1993) (denying defendant's motion for summary judgment on statute of limitations grounds

where Union, and not the plaintiff Fund, had negotiated the agreements, and defendant did not

offer any evidence that plaintiff "knew or had reason to know" of the defendant's alleged

delinquency on the alleged date of accrual); *National Elec. Ben. Fund. v. Arlington Park

Racecourse*, LLC, No. 8:11-cv-0090, 2011 WL 2712742, at *4 (D.Md. July 8, 2011) ("Given

that Arlington submitted no reports or contributions to NEBF from 1989 to 2000, NEBF was not

on notice of Arlington's delinquency until at least 2000. Whether NEBF ought to have made a

prompter inquiry into Arlington's deficient contributions between 2000 and 2009 is a fact-

intensive inquiry that the court cannot resolve at this stage."). The defendants' motion for

judgment on the pleadings with respect to the statute of limitations is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is **GRANTED** with

respect to the claims against individual defendant Pasciutia and **DENIED** with respect to the

defendants' statute of limitations argument.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: March 9, 2016
      Brooklyn, New York